CLEVELAND COÖPERATIVE STOVE CO., PLAINTIFF IN ERROR, v. HOVEY & PECK, DEFENDANTS IN ERROR.

[FILED MAY 31, 1889.]

1. **Trial:** EVIDENCE. From the written exhibits used on the trial, *held*, that a jury would be justified in finding that the defendants did not act in good faith with the plaintiff, and were liable.

2. **Principal and Agent.** An agent who sells goods subject to the approval of his principal, is not thereby a general agent; and proof of what such agent said or did in relation to the goods after the order has been filled, is not admissible against his principal without proof of his authority to bind his principal in that manner.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Sawyer & Snell,* for plaintiff in error, cited: Benjamin on Sales, 4th Am. Ed., secs. 181, 1040; *Rodgers v. Phillips,* 40 N.Y. 519; *Stafford v. Walker,* 67 Ill. 83; *Barton v. Kane,* 18 Wis. *262; *Downer v. Thompson,* 6 Hill, 208; *Smith v. Pettee,* 70 N. Y. 13; Bishop on Contracts, sec. 679; *Farrar v. Peterson,* 52 Ia. 420; *Stoddart v. Warren,* 7 Reporter, 517; *Stilwell v. Mut. Life Ins. Co.,* 72 N. Y. 385.

*Harwood, Ames & Kelly,* and *Edson Rich,* for defendants in error, cited: Parsons on Contracts, vol. 1, p. 565; *Williams v. Flood,* 6 Western Rep. (Mich.,) 175; *Downer v. Thompson,* 6 Hill, 208; *Keith v. Herschberg Optical Co.,* 48 Ark. 138.

MAXWELL, J.

This action was brought by the plaintiff against the defendants for their written order for certain stoves at a price named in the order. The order as set out in the petition is as follows:

"It is understood that all claims for shortage or allowance must be made within ten days after receipt of goods; also, that there is no agreement other than is specified herein that shall be binding on the Cleveland Coöperative Stove Company, and they reserve the privilege of rejecting or accepting this order, or any part thereof, upon receipt of same at their office.

"No. 52.                    August 30, 1885.

" *Cleveland Coöperative Stove Company:* Please ship to Hovey & Peck, Lincoln, Neb.:

6 – 5 Zip........................................................................ $2 80
6 – 6 Zip........................................................................   3 45

40

Cleveland Stove Co. v. Hovey & Peck.

| | |
|---|---:|
| 2 – 25 Social...................................................................... | $7 75 |
| 2 – 27 Social...................................................................... | 8 25 |
| 1 – 14 Casino..................................................................... | 9 00 |
| 3 – 40 Silver Cannon Base................................................. | 5 00 |
| 2 – 44 Silver Cannon Base................................................. | 6 55 |
| 1 – 48 Silver Cannon Base................................................. | 8 30 |
| 2 – 19 New Fine Arts.......................................................... | 8 10 |
| 2 – 11 New Lorian Plain..................................................... | 5 85 |
| 1 – 24 Hot Wave................................................................. | 14 50 |
| 1 – 24 New Midnight B. B................................................... | 15 25 |
| 1 – 26 New Midnight B. B................................................... | 17 65 |
| 2 – 8 Black Hawks.............................................................. | 9 25 |

Chicago Delivery

*Ent.*

"Ship at once.

"Terms due, February 1st, 1886.

"Left copy.

"Signed in duplicate.    HOVEY & PECK.

"GEORGE E. KEFER, *Agent.*"

The answer contains a purported copy of the order, which is similar to the above except "2 No. 8 Black Hawks," cook stoves; and the following: "Any of the above stoves on hand February 1st to be carried by us until sold." Why these words were in the copy and not in the original does not appear. On the trial of the cause, the jury returned a verdict for the defendants, and judgment was rendered thereon.

The testimony shows that a large part of the goods described in the order were shipped from Cleveland, Ohio, with other goods as part of a car load to Omaha, on the 21st of September, 1885, and were reshipped from Omaha to the defendants on the 1st day of October of that year. The defendants say that they refused to receive the goods, but if so, they failed to give the plaintiff notice of that fact. On the 12th day of October, 1885, the plaintiff shipped the remainder of the goods described in the order, which were received about the 27th of that month. Thereupon the defendants sent the following letter to the plaintiff:

"LINCOLN, NEB., Oct. 28, 1885.

" *To the Cleveland Coöperative Stove Co.:* GENTS —Your several invs. for goods at hand. The stoves came to hand but so far we have refused to take them from R. R. Co. Last part of the goods ordered, and some not ordered, came to hand in a wrecked condition. Shortly after, a lot of castings, badly broken, came straggling in. And to close up with, lot stoves came from Chicago. These goods please consider subject to your order.

"Yours truly,        HOVEY & PECK."

It will be observed that the defendants make no objection in the above notice that the goods were not shipped in time for the fall trade; yet this was one of the principal defenses relied upon in the trial of the case; nor do they object to the goods as not conforming to the order, the only objections being that the first shipment came to hand in a wrecked condition, and that a lot of castings were badly broken. The bill of lading at Omaha shows that three of the stoves were injured when reshipped, but to what extent does not appear, nor does it appear to have been the fault of the plaintiff. To the defendant's notice of October 28 the plaintiff sent the following answer:

"November 28, 1885.

"*Messrs. Hovey & Peck, Lincoln, Neb.:* DR. SIRS — Yours of some time ago advising us that the goods you ordered from us that we shipped were still in charge of R. R. Co. and refused by you. You stated that there were some goods not ordered by you. We say that we did not ship you a single stove which does not appear on your written order, August 30, the same being signed by you. The goods were all in perfect condition when shipped by us, and of course we are not responsible for transportation breaks. These are our most desirable goods — such as we have been constantly short of and of which we could have sold 5,000 more than we have if we could have made them.

Of course it's your privilege to decline to receive them of R. R. Co.; and when the bills mature we shall expect them to be paid promptly.   We are sorry for this occurrence, and think the better way for you would have been to receive the goods, and we furnish, as a matter of accommodation to you, the necessary repairs at half price.   Still, of course, you are to judge of this.   Still we hope you may succeed in getting your pay of goods from R. R. Co.; or perhaps you can get settlement from them for damages and take the goods; in which case specify repairs wanted, and we will furnish as above.   Hoping you are having a good season's trade, and that you may have occasion to favor us with your further orders, we are

                    "Yours respectfully,
"(5)        CLEVELAND COÖP. STOVE CO.  (M.)"

Nothing further was done until February 1, 1886, when the plaintiff sent a statement of account to the defendants for payment.   To this the defendants answered:

"This bill is for more than we owe you.
    "Yours truly,        HOVEY & PECK."

The testimony shows that the only dealings the defendants had with the plaintiff were the transaction in relation to the goods in question.   The conduct of the defendants certainly tends to show the want of good faith on their part, and a jury would be warranted in finding that the defendants had accepted the goods subject to any damages they may have sustained by reason of breakage, if any, and should pay for the same.   The first shipment of goods must have been received in Lincoln as early as the 3d of October, 1885; yet the defendants served no notice on the plaintiff that they would not receive the goods, and made no claim for shortage as provided in the terms of their own order.   Good faith on their own part required them to act with reasonable promptness in notifying the plaintiff of any dissatisfaction on their part, and the cause of the same.

On the trial of the cause, Hovey, one of the defendants, was permitted to testify to conversations he had with the agent of the plaintiff after the stoves had been received in Lincoln. The questions and answers are as follows:

Q. You may state what conversation, if any, you had with the plaintiff's agent, Mr. Kefer, regarding a settlement of this claim after you had refused to accept the stoves shipped.

The court: You may state what was done by the agent here.

Witness: Shall I relate anything he said to me?

The court: Yes; state all there is about it.

A. Why, he simply told me he was sorry the case happened as it was. He was a man we dealt with a good deal, being a resident of the town, selling goods on commission; we tried to help him. After the trouble with the stoves came to his knowledge, he came to me and said he would try and dispose of them.

This evidence was objected to, the objection overruled, and proper exceptions taken to the ruling of the court.

The court also permitted one Palmer Way to testify that Kefer, the agent of the plaintiff, after the order had been filled, offered to sell the stoves in question to him. This testimony is clearly erroneous. There is no testimony in the record tending to show that Kefer had any general authority in the matter. So far as appears, he was a mere special agent of the plaintiff to take orders for goods, which, if approved by the plaintiff, were to be filled. There is no testimony even that Kefer was such special agent at the time testified to as above by Hovey and Way. There was no apparent authority of Kefer to act in the premises, and the testimony in question was clearly inadmissible. The question here presented was before this court in *Howell v. Graff*, 25 Neb. 130, and the authority of the agent denied.

There is something suggestive in Hovey's testimony that "he [Kefer] was a man we dealt with a good deal," as his

own testimony shows that he purchased no other goods from the plaintiff than those in controversy in this case. The record also shows that a number of questions were propounded by the judge to witnesses, which seem to have been prejudicial, but to which no exceptions were taken and which cannot be considered.

The judgment of the district court is reversed, and the cause remanded for a new trial.

REVERSED AND REMANDED.

THE other Judges concur.